UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ATS INTERNATIONAL, INC, | Civil No. 11-CV-2207 (MJD/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| LAP DISTRIBUTION PTE LTD, | |
| Defendant, | |

---

This matter came before the undersigned United States Magistrate Judge upon Plaintiff's Motion to Compel Arbitration. The motion has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. A hearing was held on October 12, 2011. For the reasons outlined below, the Court recommends that Plaintiff's Motion to Compel Arbitration be granted.

**I.     BACKGROUND**

Plaintiff ATS International, Inc. (ATSI) is a Minnesota corporation that has its principal place of business in St. Cloud, Minnesota. (Mem. of Law in Supp. of Pl.'s Mot. to Compel Arbitration [Docket No. 7] at 1). It is involved in international shipping of "over-dimensional, break bulk, heavy lift freight and project cargoes." (Id.) Defendant LAP Distribution PTE, Ltd. (LAP) is a foreign entity organized under the laws of Singapore and has its principal place of business in Singapore. (Id.)

On April 4, 2007, Plaintiff and Defendant entered into a written agreement for LAP to "act as a general freight forwarding and sales agent for ATSI in Singapore, Thailand, Malaysia

1

and Indonesia.[1]" (Id. at 2).  The agreement included a provision that states: "Any dispute arising out of this Agreement and any Agreement ancillary hereto, shall be determined by the Courts and/or Arbitration Board of the United States." (Id.)

In the course of performance of the Agreement, disputes arose between Plaintiff and Defendant that the parties could not settle.  (Id.)  Counsel alleged at the hearing that the disputes arose because Defendant began to act on its own interests and improperly used Plaintiff's bills of lading and intellectual property.  As represented at the hearing, Plaintiff's disputes with Defendant amount to a dispute in regard to the profit-sharing under the agreement, Defendant's alleged continued use of Plaintiff's bills of lading, and intellectual property that Defendant allegedly retained and continues to use.  Based on these claims, on July 27, 2011, Plaintiff made a written demand that the disputes between the parties be submitted to arbitration.  (Id.)  LAP remained silent.

On August 3, 2011, Plaintiff filed a Petition to Compel Arbitration.  (Id.)  It claims it is owed sums in excess of $75,000.00 and demands "that LAP cease its unauthorized use of ATSI's bills of lading and provide an accounting." (Id.)  At the hearing, Plaintiff alleged that revenue from the contract in the span of January 2011 through June 2011 amounted to approximately $16 million—at stake in this case, Plaintiff argues, is approximately 5 percent of that amount: $800,000.

An Affidavit of Service by a server in Singapore provides that the Summons and Petition to Compel Arbitration were personally delivered on August 11, 2011 to Than Chung Kiat, an officer of Defendant.  (Aff. of Service [Docket No. 4] at 2).  On August 17, 2011, Plaintiff filed this Motion to Compel Arbitration.  (See Docket No. 5).  On August 18, 2011, Plaintiff served

---

[1] At the October 12, 2011 hearing, Plaintiff's counsel provided additional information regarding the agreement at issue. Counsel stated that Plaintiff's primary relationship with Defendant was in the transportation of bulk pieces, manufactured in Asia that are transported into the United States to be used in wind farm equipment.

the Motion to Compel Arbitration, Notice of Motion to Compel Arbitration, Memorandum of Law in Support of Plaintiff's Motion to Compel Arbitration, and Declaration of Joseph M. Goering by fax and hand delivery to Defendant's address. (See Docket No. 14). On August 23, 2011, Plaintiff filed an Amended Petition to Compel Arbitration. (See Docket No. 9). On September 8, 2011, Plaintiff served the Amended Petition and the Notice of Motion to Compel Arbitration by hand delivery to Defendant's address. (See Docket No. 16).

At the hearing, Plaintiff requested that the Court set the arbitration for November 4, 2011 in St. Cloud, Minnesota before retired Ramsey County District Court Judge Charles A. Flinn, Jr. The Defendant has not yet appeared in the case.

## II.   MOTION TO COMPEL ARBITRATION

### 1.   Discussion

#### a.   Jurisdiction

The Federal Arbitration Act provides the ability for federal courts to enforce an arbitration agreement:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.

The Federal Arbitration Act provides only a limited grant of federal court jurisdiction, which permits a party to file a petition to compel arbitration in "any United States district court which, save for [the arbitration agreement], would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties."  9 U.S.C. § 4; see also Vaden v. Discover Bank, 129 S. Ct. 1262, 1271 (2009) ("The FAA bestows no jurisdiction on federal courts but, rather, requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." (internal quotation marks omitted)).  In almost all cases, the basis of jurisdiction is "either a federal question under 28 U.S.C. §1331, or diversity of citizenship under 28 U.S.C. § 1332(a)."  Northport Health Servs. of Arkansas, LLC v. Rutherford, 605 F.3d 483, 486 (8th Cir. 2010).  In this case, Plaintiff basis its action on diversity jurisdiction.[2]  (Mem. of Law in Supp. of Pl.'s Mot. to Compel Arbitration at 3).

Diversity jurisdiction requires that two elements be satisfied: 1) complete diversity of citizenship between the parties; and 2) amount in controversy exceeds $75,000.  Northport Health Servs. of Arkansas, LLC, 605 F.3d at 486.  Diversity of citizenship is determined by "the citizenship of the parties named in the proceedings . . . plus any indispensable parties who must be joined pursuant to Rule 19."  Id. at 491.  Both elements are satisfied in this case.  The only parties to the contract are Plaintiff and Defendant.  Thus it appears that there are no other

---

[2] In Plaintiff's Petition to Compel Arbitration, Plaintiff asserted that the Court also has jurisdiction pursuant to 28 U.S.C. § 1333 because the underlying contract was a maritime contract and the claim is one "within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure."  (Pet. To Compel Arbitration [Docket 1] at 1).  However, Plaintiff also alleged that Plaintiff was a Minnesota corporation and Defendant was a Singapore corporation and that the amount in controversy exceeds $75,000.00.  (Id.)  The same language was used in the Amended Petition.  (Am. Pet. to Compel Arbitration [Docket 9] at 1).  In Plaintiff's Memorandum of Law in Support of its Motion, it only argued diversity jurisdiction.  (Mem. of Law in Supp. of Pl.'s Mot. to Compel Arbitration at 3).  When asked at the hearing which basis Plaintiff sought to establish, Plaintiff's counsel indicated that because diversity jurisdiction exists, it was basing its claim on diversity jurisdiction.  No arguments were made at the hearing as to whether this is a maritime contract, and therefore, the Court does not make a determination, at this time, whether admiralty jurisdiction exists.

indispensable parties, and Plaintiff has not stated otherwise.  Furthermore, complete diversity exists between Plaintiff and Defendant.  Plaintiff is a Minnesota corporation, whereas Defendant is a corporation that has its principal place of business in Singapore.  Finally, Plaintiff alleged that the approximate amount in dispute is $800,000—well above the amount in controversy requirement.

### b. Agreement to Arbitrate

"Under the Federal Arbitration Act, 9 U.S.C. §§ 1–16, [a] dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement."  Simmons Foods, Inc. v. H. Mahmood J. Al-Bunnia & Sons Co., 634 F.3d 466, 468 (8th Cir. 2011) (internal quotation marks omitted).  "A court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute."  Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon, No. 11-889 (ADM/JSM), 2011 WL 3294682, at *3 (D. Minn. Aug. 1, 2011) (quoting Pro Tech Indus, Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004)); see also Bakas v. Ameriprise Fin. Servs., Inc., 651 F. Supp. 2d 997, 1000 (D. Minn. 2009).  "The question of scope goes to whether the parties have agreed to arbitrate a particular claim, but not to the potential merits of that claim."  Clarus Med., LLC v. Myelotec, Inc., No. 05-934 (DWF/JJG), 2005 WL 3272139, at *3 (D. Minn. Nov. 30, 2005).

"Before a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must . . . determine whether a valid agreement to arbitrate exists between the parties . . . ."  Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 694-95 (8th Cir. 1994).  The party seeking to compel arbitration "must demonstrate that a valid agreement to arbitrate exists."  Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011).  Even

when such a motion is unopposed, courts perform an analysis to determine whether a valid arbitration agreement exists.  See <u>Burnett v. Macy's West Stores, Inc.</u>, No. 1:11-cv-01277 LJO SMS, 2011 WL 4770614, at *2 (E.D. Cal. Oct. 7, 2011); <u>Fellowship Missionary Baptist Church v. Guide One Ins. Co.</u>, No. 08-2659, 2008 WL 4586062, at *1 (E.D. La. Oct. 14, 2008).

### i. Whether a Valid Arbitration Agreement Exists

The entirety of the language supporting the petition to compel arbitration is Section 16.0 of the agreement between the parties: "Any dispute arising out of this Agreement and any Agreement ancillary hereto, shall be determined by the Courts and/or Arbitration Board of the United States."  (<u>See</u> Decl. of Joseph M. Goering in Support of Pl.'s Mot. to Compel Arbitration [Docket 8], Ex. 1 at 6).  Citing <u>Fleet Tire Serv. v. Oliver Rubber Co.</u>, 118 F.3d 619, 621 (8th Cir. 1997), Plaintiff argues that this is a "classic example of a broad arbitration clause."  (Mem. of Law in Supp. of Pl.'s Mot. to Compel Arbitration at 4).  However, in <u>Fleet Tire Serv.</u>, the provision stated that:

> [a]ny controversy or claim arising out of or relating to this Agreement or any breach of its terms **shall be settled by arbitration** in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  The expense of such arbitration shall be divided equally between the parties.  The arbitration provided for in this Section 10 **shall be the exclusive remedy for any dispute** between Oliver and [Fleet Tire], as a **substitute for any and all legal remedies** and proceedings that would otherwise be available to them.

<u>Fleet Tire Serv.</u>, 118 F.3d at 620 (alteration in original).  No such definitive language that the action "shall be settled by arbitration" or "shall be submitted to arbitration" is found in the provision before the Court.

Although a presumption exists in favor of arbitration "as to the scope of arbitrable issues, that presumption can only be triggered by a valid arbitration agreement."  <u>Christianson v. Poly-America, Inc.</u>, No. 02-1384 (RHK/AJB), 2002 WL 31421684, at *2

(D. Minn. Oct. 25, 2002); see also American Italian Pasta Co. v. Austin Co., 914 F.2d 1103, 1104 (8th Cir. 1990) ("Notwithstanding this liberal policy in favor of arbitration agreements, the Arbitration Act does not require parties to arbitrate when they have not agreed to do so."); Hormel Foods Corp. v. Cereol, S.A., No. 01-2243 (FRT/FLN), 2002 WL 31185859, at *5 (D. Minn. Sept. 30, 2002) ("To decide this motion, the Court cannot merely rely on a general federal policy favoring arbitration. This would mischaracterize the FAA's underlying policy, which does not encourage arbitration for its own sake, but aims to guarantee the enforcement of private contractual arrangements." (internal quotation marks omitted)); Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001) ("[A] party who has not agreed to arbitrate a dispute cannot be forced to do so.").  When determining if a party has entered into an agreement to arbitrate, the court should decide the question independently. Poly-America, Inc., 2002 WL 31421684, at *2. "Arbitration is a matter of consent, not of coercion," and absent a valid agreement to arbitrate, "a party cannot be forced into arbitration." Hormel Foods Corp., 2002 WL 31185859, at *4-5. As such, "the Court will not force arbitration when it cannot determine whether the parties intended the dispute to be arbitrated." Id. at *5; see also Poly-America, Inc., 2002 WL 31421684, at *4 (denying a motion to compel arbitration after finding that the language of the arbitration clause was ambiguous and construing it not to require arbitration).

In deciding whether an agreement to arbitrate exists, the courts generally apply "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Donaldson Co., Inc. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009) ("Thus, state contract law

governs the threshold question of whether an enforceable arbitration agreement exists between litigants."). The key issue before the Court in this case is not the formation of the contract that included the provision but, rather, the meaning of the provision. Determining the meaning of the provision, and whether the parties agreed to arbitrate, is a matter of contract interpretation. Cmty. Partners Designs, Inc. v. City of Lonsdale, 697 N.W.2d 629, 632 (Minn. Ct. App. 2005). "In an action to compel arbitration, [the] court looks to the parties' intentions as evidenced by the arbitration agreement's language." Id. Indeed, "except where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate . . ." Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (quoting Granite Rock Co. v. Int'l Broth. of Teamsters, 130 S. Ct. 2847, 2858 (2010)).

The provision at issue in this petition does not expressly and unequivocally state that the disputes "shall be submitted to arbitration," but instead states that disputes "shall be determined by the Courts **and/or** Arbitration Board of the United States." At the very least, the sentence in the provision is ambiguous and is susceptible to a reading as a consent to personal jurisdiction clause rather than an agreement to arbitrate.[3] Although Plaintiff argues that "[i]f there were no agreement to arbitrate, then the contract would not mention arbitration because the parties can always agree to arbitrate a dispute after the fact," (Letter Brief [Docket No. 19] at 2), the

---

[3] Indeed, federal courts and Minnesota state courts alike have noted the ambiguity created by using the term "and/or." See Apex Mining Co., Inc. v. Chicago Copper & Chem. Co., 306 F.2d 725, 728 (8th Cir. 1962); Quinn v. BJC Health Sys., 364 F. Supp.2d 1046, 1050 n.4 (E.D. Mo. 2005) ("Ordinarily, the Court refrains from using the term 'and/or' because the Court finds it to be ambiguous."); Podany v. Erickson, 49 N.W.2d 193, 196 (Minn. 1951) ("In the light of the extreme need for precision and accuracy in the choice of language in legal documents, it is regrettable to note the persistence with which the 'and/or' expression is used by trained legal draftsmen. Although it is unnecessary for us to elaborate upon the ambiguity and confusion bred by this expression when that has been ably and frequently done by so many opinions and legal writers, this case presents an appropriate opportunity for us to add our condemnation of the indiscriminate use of this Janus-faced term." (internal citations omitted)).

provision can be read in more than one way without rendering it meaningless. The provision could be read to mean that the parties agreed that any disputes shall be arbitrated by an arbitration board in the United States, but it could also be read to mean that the parties agreed, without binding themselves to arbitration, that **if** any arbitration **and/or** litigation were to take place, it will be held in the United States (i.e., merely specifying the jurisdiction for any such remedies). When a contract is "susceptible to more than one interpretation based on its language alone, it is ambiguous." Lamb Plumbing & Heating Co. v. Kraus-Anderson of Minneapolis, Inc., 296 N.W.2d 859, 862 (Minn. 1980).

Furthermore, the parties appear to submit to the personal jurisdiction of "the Courts," but it is unclear whether this refers to federal or state courts. Moreover, the Court is unable to identify the existence of any organization by the name of "Arbitration Board of the United States," and Plaintiff acknowledged in its supplemental briefing that it is also unaware of any entity with such a name. (See Letter Brief [Docket No. 19] at 3). Indeed, Plaintiff appropriately acknowledges that "[t]he language in Section 16 is not the clearest." (Id.) The Court finds that the noticeable lack of clarity in the language, the confusing sentence structure of the provision, use of the ambiguous term "and/or," and the apparent reference to an organization that does not appear to exist make the provision not only "not clear" but also ambiguous as a matter of law.

Under Minnesota law, "the primary goal of contract interpretation is to determine and enforce the intent of the parties." Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc., 666 N.W.2d 320, 323 (Minn. 2003). On November 28, 2011, Plaintiff submitted a supplemental affidavit of Joseph M Goering, Plaintiff's vice president, who declared that "[b]oth parties participated in the arms-length drafting, discussing and negotiating of terms" found in the Agreement at issue. (See Docket No. 22 at 1). Mr. Goering further asserted that Section 16 of

the Agreement "was specifically discussed between the parties" and "was intended to create the option for either party to have a dispute resolved in the Courts of the United States or to invoke arbitration in the United States"—essentially providing either with the option to initiate arbitration, which would then bind the other party to that proceeding. (Id. at 1-2).[4] Although Defendant has been provided notice of the suit and the relevant hearing date, it has made no appearance in this case. Without any testimony from Defendant as to its intent under the provision, the Court cannot, on the present record, presume that Defendant attached any different meaning to the provision. Accordingly, on the record before it, the Plaintiff's evidence in support of the present motion clarifies the ambiguity in the language of Section 16.0 of the parties' contract. Therefore, the Court finds that parties entered into a valid agreement to arbitrate.

### ii.   Whether the Disputes are Within the Scope of the Agreement

Regarding their scope, arbitration clauses must be construed liberally and any doubts must be resolved in favor of arbitration. 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008). The Act demonstrates a "strong federal policy in favor of enforcing arbitration agreements," and courts must "rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217-18, 221 (1985); Larmon, 2011 WL 3294682, at *3. "By its terms, the FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Pro Tech Indus, Inc., 377 F.3d at 871 (8th Cir. 2004) (emphasis in original) (quoting Dean Witter, 470 U.S. at 218).

---

[4] Although parol evidence, such as the supplemental affidavit of Mr. Goering, cannot ordinarily be used to vary, contradict, or alter a written agreement, when a contract is ambiguous, the court may consider parol evidence to determine the intent of the parties and clarify the ambiguity. See Nord v. Herreid, 305 N.W.2d 337, 340 (Minn. 1981); ICC Leasing Corp. v. Midwestern Mach. Co., 257 N.W.2d 551, 554 (Minn. 1977).

"The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Bakas, 651 F. Supp. 2d at 1000 (internal quotation marks omitted). As such, a court should grant the motion "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 3M Co., 542 F.3d at 1199 (quoting MedCam, Inc. v. MCNC, 414 F.3d 972, 974-75 (8th Cir. 2005)). Any doubt as to whether the dispute is within scope of the agreement to arbitrate must be resolved in favor of arbitration. Hays v. Rural Cmty. Ins. Servs., No. 1:10-cv-01020, 2010 WL 4269413, at *1 (W.D. Ark. Oct. 7, 2010).

The language of the agreement provides that the parties agreed to arbitrate "[a]ny dispute arising out of this Agreement and any Agreement ancillary hereto." Thus, the scope of the provision appears to be quite broad.

Plaintiff's first claim is regarding profit-sharing between the two parties for business that was covered by the agreement in issue. The amount of profit-sharing is specifically discussed in Section 9.0 of the Agreement. (See Decl. of Joseph M. Goering in Support of Pl.'s Mot. to Compel Arbitration [Docket 8], Ex. 1 at 4). As such, the dispute as to amounts owed based on profit-sharing certainly "arises out" of the agreement. Therefore, the parties agreed that any dispute they had regarding the amount that each party is owed under the agreement would be submitted to arbitration.

Plaintiff's second claim is that Defendant continues to use bills of lading that it is no longer authorized to do. In Section 5.2, the Agreement provides that "[t]he agent shall issue and sign Bills of Ladings and other documents only according to the Principal's instructions." (See id. at 3). Plaintiff's claim as it relates to the bills of lading is for Defendant to "cease its unauthorized use of [Plaintiff's] bills of lading." (Mem. of Law in Supp. of Pl.'s Mot. to Compel

Arbitration at 2). As such, Plaintiff's dispute regarding Defendant's authority to sign and use bills of lading directly arises out of the agreement between the parties.

Finally, Plaintiff claims that Defendant improperly retained some of Plaintiff's intellectual property. Though not presented in the memorandum in support of its motion, Plaintiff's counsel alleged the claim at oral argument. Section 3.1 of the Agreement provides that "[aside] from the [Plaintiff's] written manuals and procedures, [Plaintiff] may issue specific instructions to [Defendant] regarding necessary regulations, documents, and tariffs which shall remain the property of [Plaintiff]." (Decl. of Joseph M. Goering in Support of Pl.'s Mot. to Compel Arbitration, Ex. 1 at 2). Plaintiff alleged that Defendant has retained some of these materials and continues to use them, in addition to Plaintiff's trademarks, despite Plaintiff's request to return them. Because the Agreement specifically contemplated the interaction and handling of Plaintiff's intellectual property and specifically provided that it was to "remain the property of [Plaintiff]," the dispute surrounding the continued use of such intellectual property also arises out of the Agreement.

For the above stated reasons, the Court finds that all of the disputes alleged by Plaintiff are within the scope of the arbitration agreement.

### c.     Arbitration Proceedings

At the hearing, Plaintiff requested that the Court appoint retired Ramsey County District Court Judge Charles A. Flinn, Jr. to arbitrate the dispute between the parties. Plaintiff also requested that the Court set the arbitration hearing for November 4, 2011.

The Federal Arbitration Act provides the ability for courts to appoint an arbitrator:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be

> a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, **then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require**, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis added). Federal courts, pursuant to 9 U.S.C. § 5, have "the power, upon the application of either party, to designate arbitrators as the case may require." National American Ins. Co. v. Transamerica Occidental Life Ins. Co., 328 F.3d 462, 464 (8th Cir. 2003) (internal quotation marks omitted).

The Agreement does not designate a specific entity or individual as the arbitrator, nor does it provide a means for selecting an arbitrator. Because the Agreement fails to set out how an arbitrator should be appointed, the Court "shall designate and appoint an arbitrator." See 9 U.S.C. § 5.

Plaintiff requests that the Court appoint retired Ramsey County District Court Judge Charles A. Flinn, Jr. as the arbitrator between the parties. Generally, a court will allow parties sufficient time to attempt to appoint an arbitrator themselves. See, e.g., Jones v. GGNSC Pierre LLC, 684 F. Supp.2d 1161, 1169 (D.S.D. 2010); Schoenfeld v. U.S. Resort Mgmt, Inc., No. 05-4368-CV-C-WAK., 2006 WL 2707345, at *2 (W.D. Mo. Sept. 19, 2006); Adler v. Dellcom, Inc., 2009 U.S. Dist. Lexis 112204, at *13-14 (E.D. Mich. 2009). However, the Court "has broad discretion in determining how to appoint an arbitrator." Jones, 684 F. Supp.2d at 1169 (D.S.D. 2010); see also ACEquip Ltd. v. American Engineering Corp., 315 F.3d 151, 156 (2d Cir. 2003) ("[A] somewhat less stringent standard governs the court's decision to appoint an arbitrator as opposed to its decision to compel arbitration."). Both parties are able to apply to the Court for their selection of an arbitrator. Although it was served with notice, Defendant has not appeared

in the case, and thus, has not made such an application.  It is through Defendant's own failure that it has not taken advantage of the opportunity to participate in the selection of the arbitrator.  As such, the Court will not allow one party to avoid arbitration by burying its head in the sand.  See Neptune Maritime, Ltd. v. H & J Isbrandtsen, Ltd., 559 F. Supp. 531, 533 (S.D.N.Y. 1983) (explaining that a court "clearly" has the power to appoint an arbitrator pursuant to 9 U.S.C. § 5 when one party refused to comply with a demand for arbitration and did not "protest [the other party's] request that the Court appoint an arbitrator").  Thus, the Court will recommend that retired Judge Charles A. Flinn be appointed as the arbitrator.  However, because the requested date for arbitration has already passed, the Court recommends that the Plaintiff notify Defendant of the pending arbitration once scheduled, if so ordered by Chief Judge Davis, and attempt to establish a date available to both parties.  If no such date can be agreed upon within a reasonable time, the Court recommends that retired Judge Charles A. Flinn then set a practicable date for the arbitration.

### III.   CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Compel Arbitration [Docket No. 5] be **GRANTED**.

Dated: December 2, 2011                                     s/Leo I. Brisbois
                                                                                  LEO I. BRISBOIS
                                                                                  United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by December 16, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.